UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:23-CV-23491-RAR

LUIS ALFREDO SUAREZ MAGUAL,
MOISES MAIONICA, AND
CARLOS KAUFFMANN,

    Petitioners,
v.

JORGE DE JESUS ANEZ DAGER,

    Respondent.
_____/

**PETITIONERS' MEMORANDUM OF LAW IN
SUPPORT OF THEIR PETITION TO CONFIRM THE ICC AWARD**

Petitioners, LUIS ALFREDO SUAREZ MAGUAL, MOISES MAIONICA, AND CARLOS KAUFFMANN (together the "Petitioners"), pursuant to the Order Setting Deadlines for Confirmation Proceedings (EFC No. 83), files this Memorandum of law in support of Petitioners' their Petition to Confirm Arbitration Award (ECF No. 1) .

### I.    BACKGROUND AND PROCEDURAL POSTURE

1. On or about September 12, 2023, Petitioners filed their Petition for Enforcement of Arbitration Award (the "Petition") (ECF No. 1), seeking an Order confirming an arbitration award rendered by the International Chamber of Commerce (the "ICC") on February 9, 2023 (the "ICC Award"), and enforcing certain provisions of the ICC Award pertaining to Petitioners' rights as shareholders, and an award of fees and costs in their favor.

2. The dispute giving rise to the ICC arbitration proceeding concerned a shareholders' dispute between Petitioners and Respondent, Jorge De Jesus Añez Dager ("Respondent" or "Añez"),

over Avior Airlines, C.A. ("Avior"). Since February 2019, Añez has successfully shut out Petitioners from Avior, a company they own 50%[1] of.

3. The Petition seeks confirmation of the entire ICC Award. (¶¶6, 20, 21, Petition, ECF No. 1). The ICC Award is a 591-page document with detailed findings of law and fact on issues brought before the ICC tribunal by both Petitioners and Respondent. **Añez has failed to comply with any provision of the ICC Award.**

4. Petitioners seek a final judgment confirming the ICC Award in its entirety, and enforcing the provisions of the ICC Award that concern their rights as shareholders of Avior, as well as the monetary damages of $119,086.80 awarded in their favor and against Respondent.

5. Petitioners specifically seek to enforce the provisions of the ICC Award that: (1) find they, as member of the Suarez Group, hold a 50% ownership interest in Avior; (2) requires Añez fully reinstate Petitioners' rights as shareholders of Avior; (3) requires Añez comply with the shareholder's agreement and re-establish and respect the balance between the two ownership groups of Avior, which includes returning Petitioners' control over Avior's legal, procurement, and financial areas[2]; (4) requires Añez to immediately convene a general

---

[1] Petitioners are members of the Suarez Group composed of Luis A. Suarez M., Carlos Kauffmann, Moises Maionica, and Juan Bracamonte (together, "the Suarez Group"). Together as a group, they own 50% of Avior. (¶¶635, 644, 724, 735, 736, 1485(7), ICC Award). Mr. Suarez is the speaker of the Suarez Group.

[2] The ICC analyzed the Shareholder's Agreement at length and found the Shareholder's Agreement, along with the conduct of the parties for over 9 years, implemented a co-management of Avior between the two ownership groups, and pursuant to same, the Suarez Group had control over the legal, financial, and procurement areas of Avior, leaving the operational and logistical matters to Añez [¶1205-1254, ICC Award]. This is the "balance" the ICC refers to in ¶1254, 1485(15) of the Award, and it includes not only the reinstatement of the Petitioners' rights as shareholders of Avior, but also their control over the legal, financial, and procurement areas of Avior.

shareholders' assembly to reinstate Luis Suarez and Jose Sulbaran Santiago to the board of directors; and (5) requires Añez to pay Petitioners $119,086.80.

6. Petitioners have already briefed, in their Petition, why the ICC Award should be confirmed, recognized, and enforced pursuant to 9 U.S.C. §§ 9, 301, 302, 304, and 207, and Article IV of the Convention, or alternatively Article III of the New York Convention[3].

7. On September 17, 2024, Añez responded to the Petition requesting the Court deny the Petition (ECF No. 75), arguing that the Petition seeks the entry of a final judgment adopting findings of facts and conclusions of law that exceed the scope of the ICC Award.

8. On October 23, 2024, the Court entered an Order Setting Deadlines for Confirmation Proceedings (ECF No. 83), directing Petitioners to file a memorandum of law in support of their Petition.

9. Per the Court's Order, Petitioners' arguments in support of their Petition shall be presented in this memorandum of law, to the extent the original memorandum in the Petition does not do so already.

---

[3] When the requirements for application of both the New York Convention and the Inter-American Convention on International Commercial Arbitration (the "Convention") are met, determination as to which convention applies shall be made as follows: if a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter-American Convention and are member States of the Organization of American States, the Inter-American Convention shall apply. 9 U.S.C. § 305. Here, the parties are all citizens of states that have ratified or acceded to the Convention: United States, Germany, and Venezuela. Therefore, the Final Award falls under the Convention and the Court has jurisdiction over this action pursuant to the Convention. 9 U.S.C. §§ 301, 302, 304, 305.

## II.     ARGUMENT

### A. PETITIONERS SEEK TO CONFIRM THE ENTIRE ICC AWARD AND ENFORCE THE PROVISIONS CONCERNING THEIR RIGHTS AS SHAREHOLDERS OF AVIOR.

As the Petition already states, Petitioners seek a judgment confirming and recognizing the entire ICC Award and enforcing the findings and orders of the ICC Award that pertain to their rights as shareholders of Avior. Specifically, Petitioners seek a judgment enforcing the following findings and orders contained in the ICC Award, as set forth below:

1. Petitioners, LUIS ALFREDO SUAREZ MAGUAL, CARLOS KAUFFMANN, and MOISES MAIONICA, as members of the Suarez Group, hold a fifty (50%) ownership interest in Avior Airlines, C.A. ICC Award ¶¶ 635, 644, 724, 735, 736, 1485(7).

2. Petitioners', LUIS ALFREDO SUAREZ MAGUAL, CARLOS KAUFFMANN, and MOISES MAIONICA, rights as shareholders of Avior Airlines, C.A. shall be fully reinstated. ICC Award ¶¶ 728, 1254, 1485(15).

3. Respondent, JORGE DE JESUS AÑEZ DAGER, is ordered to comply with the Shareholders Agreement provided for in the Fifth Clause of the Letter of Intent and shall proceed to re-establish and respect the balance between the two ownership groups of Avior Airlines, C.A., consisting of the Añez-Folla Group and the Suarez Group., including returning Petitioners' control over Avior's legal, financial, and procurement areas. ICC Award ¶¶ 728, 1205-1254, 1485(15).

4. Respondent, JORGE DE JESUS AÑEZ DAGER, shall immediately convene a General Shareholders' Assembly of Avior Airlines, C.A. to reinstate Petitioners Luis Alfredo Suarez Magual and Jose Sulbarán Santiago to their positions on the board of directors of Avior Airlines, C.A., since they were wrongfully removed from their positions and responsibilities in the meeting held on February 6, 2019. ICC Award ¶¶ 728, 1254, 1485(15).

5. Petitioners, LUIS ALFREDO SUAREZ MAGUAL, MOISES MAIONICA, AND CARLOS KAUFFMANN, whose address is 900 Biscayne Boulevard, 10th Floor, Suite 1001, Miami, Florida 33132, shall have, receive, and recover from Respondent, JORGE DE JESUS AÑEZ DAGER, whose addresses are Avenida Luis Roche, Edificio Bronce, piso 3, Urbanización Altamira, Caracas, Venezuela,

the amount of U.S. $119,086.80[4], which shall bear post-judgment interest at the rate set forth in 28 U.S.C. § 1961, FOR WHICH SUM LET EXECUTION ISSUE. [¶¶1485(20)(iii), ICC Award].

**All of the above findings are directly from the ICC Award**, and Petitioners have cited the precise paragraphs where they are located. The remaining requests, that are not found in the ICC Award but to which Petitioners are entitled to pursuant to the Federal Rules of Civil Procedure and case law, are Petitioners': (1) request for pre-judgment and post-judgment interest on the monetary award; (2) request that Añez complete a fact information sheet and take part in post-judgment discovery as required by Federal Rule of Civil Procedure 69; (3) and request for fees and costs incurred in this action. These issues are briefed in Sections B, C, D, below.

This Court had no discretion to deny confirmation of the ICC Award because Mr. Añez failed to modify, vacate, or correct the ICC Award within the applicable time period. 9 U.S.C. § 9; *see also Cullen v. Paine, Webber, Jackson, & Curtis, Inc.*, 863 F.2d 851, 854 (11th Cir. 1989) ("'[C]onfirmation can only be denied if an award has been corrected, vacated or modified in accordance with the [FAA].'") A party seeking to vacate, modify, or correct the arbitration award must comply with the three-month statute of limitations in Section 12 of the FAA. 9 U.S.C. § 12; *see NuVasive, Inc. v. Absolute Medical*, LLC, 71 F.4th 861, 872-73 (11th Cir. 2023). The Court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the Convention4. 9 U.S.C. § 302 (incorporating 9 U.S.C. § 207). Given that Mr. Añez made no efforts to modify, correct, or vacate the ICC Award by May 9, 2023 – three months after the entry of the ICC Award, the Court must confirm the ICC Award.

---

[4] If the Court awards Petitioners pre-judgment interest at the statutory rate from the date of the ICC Award through the date of the judgment, Petitioners reserve the right to re-calculate the total owed to them from Añez.

Moreover, nothing precludes Petitioners from only enforcing the provisions of the ICC Award that were decided in their favor and that pertain to their rights as shareholders. In fact, other than the conclusions and findings made by the ICC in favor of Petitioners, there are no other provisions in the ICC Award that require enforcement by Añez [5]. For example, Respondent takes issue with the fact that Petitioners do not seek to enforce the provision of the ICC Award that finds that Respondent does not need to pay them $37.5 Million Dollars for the value of their shares in Avior. If the ICC Award is confirmed and recognized, then this finding too will be confirmed and recognized. It is not a finding that requires enforcement on the part of Petitioners or any enforcement at all. The exclusion of this finding from Petitioners' Final Judgment does not alter the ICC Award in any way, nor does it require Respondent to pay $37.5 Million Dollars.

Recognition and enforcement of an award are distinct steps. A. Redfern & M. Hunter, Law and Practice Of International Commercial Arbitration 335 (1986); 25 Colum. J. Transnat'l L. 717, The Enforcement of Arbitral Awards under UNCITRAL's Model Law on International Commercial Arbitration. A party possessing an arbitral award will ask a court to recognize the award as valid and binding upon the parties. *Id.* Besides, recognizing the legal effect of an arbitral award, **the court can also enforce the award, and use whatever domestic sanctions are available against the non-complying party to do so**. *Id.*;New York Convention, supra note 16, art. I(1).

This supports Petitioners' view that any judgment should enforce the specific provisions that directly pertain to their enforceable rights. After all, it is their Petition that is pending before the Court. If Añez desires to enforce other provisions of ICC Award, <u>of which there are none that require enforcement by him</u>, then he must file a counter-petition or motion seeking enforcement

---

[5] Añez does not have standing to enforce the award of fees to GAFCA in the ICC Award.

of provisions found in his favor. *See In Exclusive Trim, Inc. v. Kastamonu Romania*, S.A., 698 F. Supp. 3d 621 (S.D. N.Y. 2023) (confirming an award and emphasizing that the burden to seek alternative enforcement lies with the non-moving party).

The ICC Award says what it says, and if it is confirmed, then Petitioners have every right to enforce the provisions of it that Respondent has refused to comply with, and that were decided in their favor.

### B. PETITIONERS ARE ENTITLED TO PRE-JUDGMENT AND POST-JUDGMENT INTEREST ON THE $119,086.80 AWARDED TO THEM.

Both pre-judgment and post-judgment interest serve similar purposes. "Prejudgment interest serves two purposes: first, it compensates the plaintiff for the loss of the use of his or her money; and, second, it forces the defendant to relinquish any benefit that it has received by retaining the plaintiff's money in the interim." *Brandywine Smyrna, Inc. v. Millennium Builders, LLC,* 34 A.3d 482, 486 (Del. 2011). Post-judgment interest "is awarded to compensate a plaintiff for having been deprived of the value of principal losses from the time of judgment to the time that the plaintiff is actually paid." *Becker Holding Corp. v. Becker*, 78 F.3d 514, 516 (11th Cir. 1996).

"Thus, pre-judgment and post-judgment interest serve exactly the same purpose, albeit for different time periods: they make the plaintiff whole for having been deprived of the use of the principal loss amount." *Id.* Pre-judgment interest refers to interest that runs from the date of the arbitration award until the court's entry of a judgment confirming the award; and post-judgment interest refers to interest that runs after the entry of judgment confirming the arbitration award until the day the award is paid. *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1054 (9th Cir. 2013).

Courts do not lack authority to award interest where an arbitration award is silent. *Fidelity Federal Bank, FSB v. Durga Ma Corp.* 59 387 F.3d 1021, 1024 (9th Cir. 2004)(awarding post-judgment interest even where the arbitration award is silent); *see Northrop Corp. v. Triad Int'l Mktg. S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988) (per curiam); *see also Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*, 299 F.3d 769, 794-95 (9th Cir. 2002) (applying same reasoning to attorney's fees), *vacated on other grounds by* 341 F.3d 987, 994 n.11 (9th Cir. 2003) (en banc)*;* While the arbitrators' explicit award of interest on the contract damages should be respected, their failure to speak on interest otherwise does not constitute a denial of interest on other parts of the award. *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1055 (9th Cir. 2013).

### i. Petitioners are Entitled to Post-Judgment Interest.

A judgment entered by a federal court confirming, modifying, or correcting an arbitration award "<u>shall have the same force and effect, in all respects, as, and be subject to all provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered</u>." 9 U.S.C. § 13; *Parsons & Whittemore Alabama Machinery and Services Corp. v. Yeargin Const. Co., Inc.* 744 F.2d 1482, 1484 (11th Cir. 1984)

Post-judgment interest is mandatory and governed by federal law. *See Selective Ins. Co. of Am. v. Heritage Constr. Co., LLC*, No. 19-3174 (JRT/JFD), 2024 U.S. Dist. LEXIS 78260, at *7-8 (D. Minn. Apr. 30, 2024); *Perkins v. Standard Oil Co.*, 487 F.2d 672, 674 (9th Cir. 1973) ( holding that "post-judgment interest on a district court judgment is mandatory per 28 U.S.C. § 1961"); *Forest Sales Corp. v. Bedingfield*, 881 F.2d 111, 113 (4th Cir. 1989).

28 U.S.C.S. § 1961 mandates that

> **(a)** Interest shall be allowed **on any money judgment** in a civil case recovered in a district court. Execution therefore may be levied by the marshal, in any case where, by the law of the State in which such court is held, execution may be levied for interest on judgments recovered in the courts of the State. Such interest shall be calculated from the date of the entry of the judgment, at a rate

    equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[.] the date of the judgment. The Director of the Administrative Office of the United States Courts shall distribute notice of that rate and any changes in it to all Federal judges.

**(b)** Interest shall be computed daily to the date of payment except as provided in section 2516(b) of this title [28 USCS § 2516(b)] and section 1304(b)(1) of title 31, and shall be compounded annually.

**Post-judgment interest applies to arbitral awards confirmed by the district court**. *Parsons & Whittemore Ala. Mach. & Servs. Corp. v. Yeargin Constr. Co.*, 744 F.2d 1482, 1484 (11th Cir. 1984) (holding that that a judgment affirming an arbitration award is governed by statutory post-judgment interest rates); *First Green Indus. A.S. v. Solar Dairy, LLC*, No. 23-CIV-22433, 2024 WL 4342965, at *6 (S.D. Fla. Sep. 24, 2024)(finding that a judgment confirming an arbitration award is subject to pre and post judgment interest); *Sequip Participações*, 2019 WL 8301064, at *7-8 (S.D. Fla. Feb. 26, 2019) (awarding pre and post-judgment interest on the judgment of a foreign arbitration award confirmation); *See also Merit Insurance Co. v. Leatherby Insurance Co.*, 728 F.2d 943, 945 (7th Cir.1984) (applying post-judgment interest rate permitted by Illinois law to arbitration award).

Moreover, post-judgment interest should be awarded on the entire amount of the judgment, including any pre-judgment interest. *America Steel Trade Corp. v. Metalhouse, LLC.*, 2022 wl 17370389, at *4 (M.D. Fla. Nov. 17, 2022)(awarding post-judgment interest on the total judgment amount confirming an arbitration award, including pre-judgment interest); *See Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995). Post-judgment interest is awarded from the date of judgment until the judgment is satisfied. *Id*.

Therefore, upon entry of a final judgment in this case confirming, enforcing, and recognizing the ICC Award, Petitioners must be awarded post-judgment interest at the appropriate

Lg/6772

rate specified by 28 U.S.C. § 1961(a) on the entire amount of the judgment, including prejudgment interest, from the date that the judgment is entered until the judgment is satisfied.

> ii. **The Court Should Grant Petitioners Pre-Judgment Interest from the Date of the ICC Award through the Date of any Judgment Confirming the ICC Award.**

Under federal law, pre-judgment interest should "normally be awarded," *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1447 (11th Cir. 1998), and, under Florida law such interest is required. *Lewis v. Haskell Co.*, 304 F. Supp. 2d 1347, 1352 (M.D. Ala. 2004, applying Florida law)(awarding prejudgment interest in a judgment confirming an arbitration award); *First Green Indus. A.S. v. Solar Dairy, LLC*, No. 23-CIV-22433, 2024 WL 4342965, at *6 (S.D. Fla. Sep. 24, 2024); *Sequip Participações*, 2019 WL 8301064, at *7-8 (S.D. Fla. Feb. 26, 2019).

"The essential rationale for awarding prejudgment interest is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 195, 115 S. Ct. 2091 (1995). *Clark Material Handling Co. v. Toyota Material Handling U.S.A., Inc.*, No. 3:12-cv-00510-MOC-DSC, 2015 U.S. Dist. LEXIS 72510, at *24 (W.D.N.C. June 3, 2015) (finding that prejudgment interest needed to be awarded to serve the legitimate goal of compensating Plaintiff for Defendant's wrongful conduct). Moreover, awards of prejudgment interest are not punitive. *E.E.O.C. v. Kentucky State Police Dep't*, 80 F.3d 1086, 1097 (6th Cir. 1996). A proper determination of pre-judgment interest involves a consideration of various case-specific factors, including compensation for the time, value of the lost money, as well as for the effects of inflation. *Hopkins v. Nichols*, No. 1:19-cv-00059, 2024 U.S. Dist. LEXIS 164386, at *2-3 (M.D. Tenn. Sep. 12, 2024)(citation omitted).

This Court's decision on whether to grant prejudgment interest does not rest on state law. *See Indus. Risk Insurers,* 141 F.3d at 1447, overruled on other grounds by *Corporación AIC, SA v. Hidroeléctrica Santa Rita S.A.*, 66 F.4th 876 (11th Cir. 2023); ("[b]ecause the district court below held federal subject-matter jurisdiction … the decision whether to grant prejudgment interest was a matter for the court's discretion and was not controlled by state law."). The Eleventh Circuit recognizes that prejudgment interest is not a penalty, but rather compensation to the plaintiff, and "absent any reason to the contrary, it should be normally awarded when damages have been liquidated by an international arbitral award." *Indus. Risk Insurers*, 141 F.3d at 1446-47 (quotations and citations omitted); *see also Sequip Participações S.A.*, 2019 U.S. Dist. LEXIS 229900, 2019 WL 8301064, at *7 (awarding pre-judgment interest to petitioner seeking confirmation of an international arbitration award).

Here, Petitioners request the Court award pre-judgment interest at the statutory rate, however it is in the Court's discretion to determine the appropriate rate for the pre-judgment interest. *See Chiquita Brands Int'l v. Zamhern S.A., No. 21-cv-22359-ALTMAN/Reid, 2023 U.S. Dist. LEXIS 185470*, at *4 (S.D. Fla. Oct. 13, 2023) ("[i]n the absence of a controlling statute, the appropriate rate at which to calculate prejudgment interest is left to the discretion of the court to determine"); *see also, e.g., Indus. Risk Insurers*, 141 F.3d at 1447. However, the Eleventh Circuit has approved the use of the prime during the relevant period. *See Ewing v. Carnival Corp.*, No. 19-20264-CIV-GOODMAN, 2022 U.S. Dist. LEXIS 230673, at *7 (S.D. Fla. Dec. 22, 2022).

In the instant case, the Court should award Petitioners pre-judgment interest because the ICC Award granting Petitioners $119,086.80 was entered **almost two years ago**, on February 9, 2023. Since then, Respondent has not made a single payment, nor has he complied with any other portion of the ICC Award. Despite numerous requests that Respondent comply with the ICC

Award, he has refused to do so, forcing Petitioners to bring forth this action and incur additional expenses. As the findings of the ICC Award show, Respondent, intentionally and maliciously ousted Petitioners from Avior, completely disregarding their rights as shareholders.

Five years have passed since Petitioners were pushed out of Avior and almost two years have passed since the entry of the ICC Award, and still Respondent refuses to reinstate Petitioners' rights as shareholders and refuses to comply with the ICC Award. Petitioners should be awarded pre-judgment interest as compensation for their lost time, additional expense, and Respondent's wrongful conduct. *Sequip Participacoes S.A. v. Marinho*, 2019 WL 8301064, at *7 (S.D. Fla. Feb. 26, 2019); *Waterside Ocean Nav. Co., Inc. v. International Nav. Ltd.*, 737 F.2d 150, 153-54 (2nd Cir. 1984)("[a]bsent persuasive reasons to the contrary, we do not see why pre-judgment interest should not be available in actions brought under the [New York] Convention."); *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59 (3d Cir. 1986) (holding that confirmed arbitral awards bear interest from date of award, not from date of judgment confirming award).

Petitioners respectfully request the Court exercise its discretion and award them prejudgment interest, at the statutory rate, from February 9, 2023 (the day that the Arbitration Award was entered into) until the date that a final judgment confirming Petitioners' arbitration award is entered.

    **C. PETITIONERS ARE ENTITLED TO HAVE AÑEZ COMPLETE A FACT INFORMATION SHEET AND RESPOND TO POST-JUDGMENT DISCOVERY.**

Federal Rule of Civil Procedure 69 provides for post-judgment discovery in aid of a money judgment in accord with the procedure of the state where the court is located. Fed. R. Civ. P. 69(a) (emphasis added). In Florida, that means directing the judgment debtor to complete debtor information forms as specified in Florida Rule of Civil Procedure 1.560(c) and Form 1.977 (a

"Fact Information Sheet"). Federal Rule of Civil Procedure 69(a)(2) also allows a judgment creditor to take discovery in aid of execution as provided by the Federal Rules of Civil Procedure or the Florida Rules of Civil Procedure. Fla.R.Civ.P. 69(a)(2).

Fed. R. Civ. P. 69 applies if there is a money judgment. *See United States v. Varnado*, 447 F. App'x 48, 50 (11th Cir. 2011) (citing *Ziino v. Baker*, 613 F.3d 1326, 1328 (11th Cir. 2010)); *Hamilton v. MacDonald*, 503 F.2d 1138, 1148 (9th Cir. 1974). Judgments confirming arbitral awards with monetary awards can order the judgment debtor to complete a fact information sheet. *Pott v. World Cap. Props*, No. 21-23942-CIV-LENARD/LOUIS, 2024 U.S. Dist. LEXIS 21810, at *11 (S.D. Fla. Feb. 7, 2024)(court ordered judgment debtor to complete fact information sheet in judgment confirming arbitral award); *See Printing and Paper Trades Auxiliary Workers v. Cuneo Eastern Press, Inc. of Pennsylvania*, 72 F.R.D 588, (E.D. Pa. Nov. 18, 1976)("[f]ederal policy of encouraging arbitration would not be promoted by placing greater restrictions on executability of judgments enforcing arbitration awards than there are on executability of ordinary federal court judgments")

Here, the ICC Award contains a monetary obligation against Añez in the amount of $119,086.80. Consequently, any judgment confirming the ICC Award, and the monetary award therein will be considered a money judgment, entitling Petitioners to engage in post judgment discovery, including but not limited to, having Añez complete a Fact Information Sheet, propounding post-judgment request for production and interrogatories, and taking his deposition in aid of execution. Respondent's argument that such request attempts to modify the ICC award is another futile attempt to not comply with the ICC Award. Thus, Petitioners request that any judgment confirming the award require Añez complete a Fact Information Sheet and take part in

Lg/6772

post-judgment discovery, as required by Florida Rule of Civil Procedure 1.560(c) and Federal Rule of Civil Procedure 69.

### D. THE COURT SHOULD FIND PETITIONERS ARE ENTITLED TO FEES FOR THEIR EFFORTS IN ENFORCING THE ICC AWARD.

Petitioners seek an award of reasonable attorneys' fees and costs incurred in this proceeding in their efforts to enforce the ICC Award. This action has been pending since September 2023 and there have been no efforts by Añez to comply with the ICC Award. Instead, Añez has vexatiously litigated this action, opposing confirmation of the ICC Award despite failing to move to challenge, modify, correct, or vacate to the ICC Award within the three (3) month period in which he was required to do so.

Not only has Añez failed to comply with the ICC Award <u>for almost two years</u>, forcing Petitioners to file this action, but the ICC Award found that Añez's conduct during the ICC Arbitration was reproachable and reprehensible since the beginning of the arbitration (1) for making multiple unsolicited submissions, even when expressly instructed not to do so, causing a burden and procedural disorder; (2) for failing to comply with precautionary measures; and (3) for showing a clear disregard for the orders issued by the arbitral tribunal causing further judicial labor. [ICC Award ¶¶ 1465, 1466, 1467, 1469, 1482]. *Int'l Union of Petroleum & Indus. Workers v. W. Indus Maint. Inc*., 707 F.2d 425, 428 (9th Cir. 1983)(bad faith supporting an award of fees may be found in conduct that led to the lawsuit or in conduct occurring during the course of the action).

A district court may award attorneys' fees in an action to enforce a foreign arbitral award where the losing party acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See Ministry of Def. & Support v. Cubic Def. Sys*., 665 F.3d 1091, 1104 (9th Cir. 2011) (holding that "federal law permits an award of attorney's fees in an action under the Convention, as it does in

other federal question cases."). An "unjustified refusal to abide by an arbitrator's award" may constitute bad faith. See *Id.* (citing *Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc.,* 84 F.3d 1186, 1192 (9th Cir. 1996)); *Int'l Union of Petroleum & Indus. Workers v. W. Indus Maint. Inc.*, 707 F.2d 425, 428 (9th Cir. 1983).

Here, Añez has demonstrated bad faith conduct in his continuous refusal to abide by the ICC Award. The sole reason for Añez's refusal to respect Petitioners' rights as shareholders, reinstate them into Avior, and comply with the ICC Award <u>is to keep Petitioners shut out of Avior</u>. This is oppressive behavior and shows Añez's clear disregard for Petitioners' property and shareholders' rights. Añez's unjustifiable refusal to comply with the ICC Award has significantly affected Petitioners' rights as shareholders of Avior and has delayed their inevitable reinstatement in Avior. The more time Petitioners are kept out of Avior, the more time Añez keeps his authoritarian control over Avior, making unilateral decisions without any regard for Petitioners' rights as shareholders, and with an illegitimate board of directors.

Añez has also vexatiously litigated this case, even seeking the vacatur of the previously entered final judgment because it contained an additional address that he contends he does not live at. The Court warned him at the July 25, 2024 hearing that the arguments he was making made no difference in the long run, because even if the final judgment was vacated, another one could be entered the next day.

> THE COURT: It's vexatiously multiplying or delaying the proceeding.
>
> 56:3-4, Hr. Tr., July 25, 2024.
> [. . .]
>
> THE COURT: It is -- I mean, it's one of the reasons I keep asking about, like, **what is the long game**? For example, the case that you rely heavily on, Judge Gayles' case, he reinstituted the judgment. **The outcome was the same**. So what are we doing? It's a rhetorical question at this posture because, an hour and a half later, I

know what you are doing. I'm just saying, you know, **in response to the point you made a few minutes ago about not contesting the award, <u>it feels like you are</u>**.

56:9-17, Hr. Tr., July 25, 2024.

Thus, for the foregoing reasons, the Court should find Petitioners are entitled to recover their reasonable fees and costs incurred in this action, and should reserve jurisdiction to determine the amount of fees and costs.

### III.   CONCLUSION

For the foregoing reasons, the Court should grant Petitioners', LUIS ALFREDO SUAREZ MAGUAL, MOISES MAIONICA, and CARLOS KAUFFMANN, Petition (ECF No.1) in its entirety, and enter a Judgment,

**(a)** confirming, recognizing, and enforcing the ICC Award;

**(b)** declaring Petitioners, as members of the Suarez Group, own 50% of Avior [¶¶ 635, 644, 724, 735, 736, 1485(7), ICC Award];

**(c)** ordering the full reinstatement of Petitioners' rights as shareholders of Avior [¶¶728, 1254, 1485(15), ICC Award];

**(d)** ordering the Respondent, JORGE DE JESUS AÑEZ DAGER, comply with the Shareholders Agreement provided for in the Fifth Clause of the Letter of Intent and proceed to re-establish and respect the balance between the ownership groups of Avior, including returning Petitioners' control over Avior's legal, financial, and procurement areas [¶¶ 728, 1205-1254, 1485(15), ICC Award];

**(e)** ordering Respondent to immediately convene a general shareholders' assembly to reinstate Luis Suarez and Jose Sulbaran Santiago to Avior's board of directors, board members who were wrongfully removed from their positions and responsibilities in the meeting held on February 6, 2019 [¶¶ 728, 1254, 1485(15), ICC Award];

Lg/6772

**(f)** entering judgment in favor of Petitioners and against Respondent in the amount of $119,086.80, plus pre-judgment interest from the date of the entry of the ICC Award through the date of the judgment, at the statutory rate, and awarding Petitioners post judgment interest at the appropriate rate specified by 28 U.S.C. § 1961(a) on the entire amount of the judgment, including prejudgment interest, from the date of the judgment; [¶¶1485(20)(iii), ICC Award];

**(g)** grant Petitioners' attorneys' fees and costs in this proceeding and reserve jurisdiction to determine the amount of fees and costs;

**(h)** directing Respondent complete debtor information forms as specified in Fla.R.Civ.P. 1.560(c) and Form 1.977 (*see* Fed.R.Civ.P. 69(a)); and

**(i)** grant any other relief it deems just and proper.

Respectfully submitted on this 25th day of October, 2024.

**BLAXBERG GRAYSON, P.A.**
*Attorneys for Petitioners*
25 SE Second Avenue, Suite 730
Miami, Florida 33131
Phone:   (305) 381-7979
Fax:       (305) 371-6816
Primary E-mail: Moises.Grayson@blaxgray.com
Secondary E-mail: Lissette.garcia@blaxgray.com

By: */s/ Lissette Garcia*
Lissette Garcia, Esq. Fla. Bar No: 1027994

Lg/6772

## IV. REQUEST FOR HEARING UNDER LOCAL 7.1

Petitioners request a hearing on their Petition (ECF No. 1) and this memorandum of law in support of their Petition, pursuant to Local Rule 7.1(b). A hearing will help the Court consider the Petition and the findings of fact and law that Petitioners seek in a final judgment, especially considering that the ICC Award is 591 pages and contains extensive findings of fact and law. Petitioners would like the opportunity to demonstrate to the Court that all the findings of fact and law they are requesting be included in a final judgment are in the ICC Award. At a hearing, it will be much easier to point to the provisions of the ICC Award supporting the requests in the Petition. Petitioners estimate two (2) hours is sufficient for argument.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the forgoing was served on counsel for Respondent via ECF/Pacer Filing Portal on this 25th day of October, 2024.

**BLAXBERG GRAYSON, P.A.**
*Attorneys for Petitioners*
25 S.E. Second Avenue, Suite 730
Miami, FL 33131-1506
Telephone: (305) 381-7979
Facsimile: (305) 371-6816
Primary Email:  Moises.Grayson@blaxgray.com
Email: Lissette.Garcia@blaxgray.com

By: */s/ Lissette Garcia*
    Lissette Garcia, Esq.
    Florida Bar No.: 1027994
    Moises T. Grayson, Esq.
    Florida Bar No.: 369519